UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Michael Trupei, <u>pro se</u>  )
R12743-004                     )
FCC-Coleman Medium Security    )
P.O. Box 1032                  )
Coleman, Florida 33521-1032    )
        Plaintiff,        )
                           )
vs.                            )  Civil Action No: <u>1:06-cv-978</u> (PLF)
                           )
UNITED STATES DEPARTMENT of the NAVY, <u>et al</u>., )
        Defendant(s).     )

**RECEIVED**

MAR 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY
IN SUPPORT TO HIS OPPOSITION TO DEFENDANT'S
<u>SUMMARY JUDGMENT</u>, **VERIFIED**

    PLAINTIFF, the Michael Trupei ("Plaintiff"), appearing in <u>propria persona</u> and hereby surreplies to Defendant's <u>Reply</u> by additionally rebutting its position for summary judgment in this matter, to wit:

**I. Plaintiff's Opposition does not Concedes
to any or all of his Claims Whatsoever**

    Defendant assert that Plaintiff's Opposition does not dispute <u>any</u> of Defendant's Statement of material Facts not in Genuine Dispute. <u>See</u> Defend. Reply at p. 3. Plaintiff submits that in addition to his already objected Defendant's response in his December 4th, 2006, opposition, he now in this/his surreply further disputes Defendant's stance on matter previously taken into consideration in his erstwhile objections to Defendant's Motion for Summary Judgment, and raises, once again, a genuine issue of material facts still in genuine dispute.

    To begin with the beginning in the 2nd ¶ of Defendant's statement of material facts still in genuine dispute where Defendant avers that: "the SF-61 is filled out when the employee is first appointed (and on subsequent appointments)." Defend. Stat. of Mate. Facts..., at p. 1. <u>See</u> also Armstrong Decl. at ¶ 4; Woods Decl. ¶ 5.

Plaintiff objects to its statement because SF-61 is NOT an appointment document, as portrayed by the Defendant, rather it is a separate instrument containing oath of office required under § 3331 and the two (2) officer affidavits (B and C) pursuant to § 3332 of the Title 5 U.S.C., which emphasize the specific conditions about the employment of an "officer" and/or "employee" already appointed under 5 U.S.C. § 2105, as it must be done within thirty (30) days prior to the execution of SF-61, denoting a subsequent process to fulfill the entrance to Federal civil service position.

Section 3332 of 5 U.S.C. provides:

> An officer, within 30 days after the effective date of his appointment, shall file with the oath of office required by section 3331 of this title an affidavit that neither he nor anyone acting in his behalf has **given**, transferred, promised, or paid any consideration for or in the expectation or hope of receiving assistance in securing the **appointment**. 5 U.S.C. § 3332. See and Cf. SF-61, part "C."

It appears that Defendant is basing its contention on SF-61's language where the section "C" reads in part: "Affidavit as to Purchase and Sale of Office...**given**, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment." See exhibit-A, part "C" attached hereto. The same language is true in the second-half of § 3332. Specifically, beginning with the second part of that section by way of the past participle of the verb: "given...[and ending with the noun] appointment" is identical in its text as the one in SF-61's part "C", except in SF-61 there is a singular pronoun by way of "this" which substitutes definite article "the" found in § 3332 which the latter implies to a mandatory appointment by and through 5 U.S.C. § 2105. See and Cf., SF-61 and § 3332; see also exhibit-A, attached hereto. As such, it does not mean, as Defendant would like it to portray, that an officer and/or employee when he/she executes his/her SF-61, he/she is being simultaneously appointed via SF-61 to his/her respective Federal employment. It only means that an appointment was taken in the past 30 days, See exhibit-B, attached hereto. And the next step in the process is the execution of the oath of office and the two (2) affidavits, stipulating the conditions of the employment, by an officer or employee authorized by the head of the agency under 5 U.S.C. § 2903

herein, or at least referred or directed Mr. Armstrong into right direction as to where the requested records may ultimately be found and had. Defendant, however, failed altogether to do so. And besides, Defendant does not contend that S/A Ashcroft left the employment at the Department of the Navy. Since he is still active at DON, the "letter of appointment" and "oath of office" must reasonably be found thereat.

Yet another alternative source for the search, would be to get in touch with S/A Ashcroft himself. He could have had given the information as to whereabouts of his "letter of appointment" and thereafter the execution of his "oath of office". Again, Defendant has failed to do so. Instead, it asserts that Plaintiff failed to "dispute any of Defendant's evidence concerning the adequacy of its searches. Defend. Reply at p. 4, 2nd ¶. As it stands, Defendant only searched, three (3) times, the same OPF file but failed to search any other logical places where such records/documents may also be stored and had, at DON. Absent showing searches, other than OPF, Defendant's search was regrettably inadequate for the purposes of FOIA. And thus, the genuine issue of material fact is still in genuine dispute, thereby it is not entitled to the judgment as a matter of law.

Defendant further asserts that Plaintiff "attempts to challenge the adequacy of Defendant's searches, [and that] Plaintiff effectively concedes that the requested records could not be found." Defend. Reply at p. 4, 3rd ¶, and Cf. with Plaint. Object. on p. 8, 1st ¶. Plaintiff submits that Defendant misrepresents Plaintiff's objections and its contentions, of his concessions, is only a broad statement that failes to point to the precise passage or phrase as to where Plaintiff concedes to Defendant's argument. In fact, what Defendant does, it tries to spin or otherwise misrepresent the Plaintiff's statement(s) in the hopes that this Court would take its way. What actually Plaintiff says on page 8 of his Objections, he merely advises Defendant as to where and how the records, herein requested, may be located, or found, and nothing more. Thus, the notion that Plaintiff conceded to Defendant's assertion is wholly without merit.

-5-

Similarly, Plaintiff objects to Defendant's assertions that he "speculates" where the responsive records could be found. A reasonable posibility also exists that these records may also be misfiled or mislaid. Thus, it is all the more a reason to search for them elsewhere within the system of such records, at DON. In fact, Defendant presses its stale argument that: "...apparently [Plaintiff] does not dispute that Defendant conducted a reasonable searches...." See Defend. Reply on p. 4, 3rd ¶. Again, Defendant mischaracterizes Plaintiff's Objection on p. 8, 1st ¶, where he consistently objects to Defendant's limited search, that is, it only searched the OPF and nothing else, shows that Defendant has not reasonably demonstrated a "good faith" effort to conduct its search for the records by "using methods which [could] reasonably be expected to produce the information requested." See Tooley v. Bush, 2006 U.S. Dist. LEXIS 92274, citing Ogelsby, 920 F.2d at 68. See also Reply at p. 4, 2nd ¶. Plaintiff reasserts his erstwhile objections of December 4th, 2006, and this/his surreply, that he only advises as to where to search for the records Defendant should fix. As such, no concession was made, directly, indirectly, or otherwise to anything or nothing whatsoever in this suit. Defendant, on the otherhand, searched only the S/A Ashcroft's OPF file, supposedly three (3) times, and no responsive records were found. After the third time of the search, the common sense would dictate to look for the records elsewhere, which Defendant failed to do, makes it clear that Defendant's search was not made in "good faith." Thus, Plaintiff objects to Defendant's searches, as they were not definite, and, of course, very limited, and the genuine issue of material fact is still in dispute. As such, this Honorable Court should not grant Defendant's Motion for Summary Judgment, at all, and should order Defendant to direct its energy elsewhere within the relevant system of records at DON, and consistent with Plaintiff's objections and this surreply.

Since FOIA could also be considered as a discovery "Act" or otherwise it is synonymous with Fed.R.Civ.P., Rule 26. As such, the United States Supreme Court in the matter of Oppenheimer Fund Inc., v. Sanders, 437 U.S. 340, 351, 51 L.Ed 2d 253, 98 S.Ct 2380 (1978) has articulated the definition of reasonableness pursuant to Fed.R.Civ.P.,

Rule 26(b)(1). The key phrase in the definition is: "'<u>relevant</u> to the subject matter involved in the pending action' has lead to other matter that could bear on, any issue that is or may be in the case." <u>Id.</u>, at 351. In the instant case, Defendant admits that S/A Ashcroft was appointed on July 20th, 1986. <u>See</u> Armstrong Decl., at p. 3, ¶ 7. If so, then at the very least, Messrs. Armstrong and Woods, should have born their attention, besides the OPF already searched, elsewhere where the requested documents may be found. Without the doubt, it would give them an additional information that "may lead to" the responsive documents. Messrs. Armstrong and Woods, both employed by Defendant, failed to do so. This shows, once again, <u>bad faith</u> modus operandi on the part of Defendant, and this Court should direct it to those quarters, or locations where S/A Ashcroft was initially appointed into the civil service. More likely than not, the responsive records will be found there.

Defendant relies on <u>Oglesby v. U.S. Dept. of the Army</u>, 920 F.2d 57, 68 (D.C.Cir.1990). In <u>Oglesby</u>, the Court explained with respect to an adequacy of the search that: "...the agency must show that it made a good faith effort to conduct for the requested records, using methods which can be reasonably to produce the information requested." <u>Id.</u>, at 68. In this case, Defendant only searched S/A Ashcroft's OPF file, the same file supposedly it searched three (3) times, and could not locate the responsive records. If that was the case, then why the Defendant did not search any other field office, particularly in light of the one where S/A Ashcroft executed his appointment on July 20, 1986. As Defendant was required to explain in its declaration that no other system was likely to produce responsive documents. <u>Oglesby</u> at 68. It, however, failed to do so. As such, Defendant shows <u>bad faith</u> in search for the requested records. And this Court should direct Defendant to further search other possible locations where the records may be found.

Defendant further relies on <u>Oglesby</u> where that Court held that where: "...a document indisputably exists or once existed...does not mean that it still exists." <u>Id.</u> The <u>Oglesby</u> Court, however, addresses a myriad of investigatory records/documents that were scattered throughout the system of records in the army and elsewhere. Most of them

-7-

were subject to one or more exemptions under § 552(b) which were subjected to classification. Here, Plaintiff requested two (2) employment records, namely "oath of office" and "letter of appointment" and cannot be paralleled with the type that Carl Oglesby sought. The two (2) requested records are usually stored in a prominent and easy to find personnel file, or otherwise OPF folder. Whereby the investigatory records sought in Oglesby and the likes, are highly classified in nature and are thus stored in archives or similar other places, and not in an employment file such as "letter of appointment" and "oath of office" are normally found. Because the Oglesby type of records requires a lenghty search and come under the criteria of § 552(b), no such exemption applies in this case. Nor lenghty searches are technically needed here. Once in the while, such as in this instance, the records are stored elsewhere. As such, it would require to search such other field offices where they may logically be found. And doing so, it would still take less time to search for them, than it would take for the Oglesby types. Therefore, the two (2) searches cannot be compared at all. The reliance on Oglesby is thus a partial misnomer, as it treats the adequacy of the search for the type of the records not sought herein.

Likewise the Nation Magazine v. United States Customs Service, 71 F.3d 885 there the Court held that: "even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccesful search for the document so long as the search was diligent. id. Again, that case treats a variety of highly classified records that are exempted under § 552(b) and had been scattered throughout the system of records at USCS, and cannot be compared with the records sought in this case.

Because in Oglesby and Nation Magazine, there the Plaintiff's sought hundreds, if not thousands, of the investigatory and exempted records. as those documents are not kept in one particular place. Rather they are interspersed among different locations within the system of records and controlled by and through bueraucratic network of the respective agencies. No such scenario exists here. Instead, Plaintiff seeks the S/A Ashcroft's employment protocols. These records are normally stored in one place,

namely Official Personnel Folder of OPF. For every storage of records, however, there is an exception. Whether by mistake or by other reasons, the responsive records in this case, as Defendant claims, cannot be found in its respective OPF file. And thus, more likely than not, the records are stored in another field office that S/A Ashcroft once occupied. And that field office was nor searched, as it supposed to be, means that Defendant failed to obey <u>Oglesby</u> and likes. This Honorable Court should direct Defendant, at least to the office where S/A Ashcroft, where his appointment of July 20th, 1986 was executed. Perhaps that office would bear elsewhere to find the requested employment protocols.

Finally, on page 8 of its Reply, Defendant sounds doubtful as to whether the requested records are: "...in existence at all, are maintained in the individual employee's OPF." <u>see</u> Reply at p. 8, 2nd ¶. Defendant, however, does not support that proposition, other than relying on Mr. Armstrong's Declaration which likewise lacks support, as it implies by way of the past tense verb "might" (<u>See</u> Armstrong Decl. p. 2, 4th ¶) speculating that the records could be stored anywhere within the system of records at DON. This statement alone shows that the records herein requested may be stored elsewhere. As such, it means that Defendant's search was insufficient to support its adequacy of the search, and this Honorable Court should direct Defendant to further scrutiny about the location(s) as to where the records may be kept. Thus, the summary judgment is not appropriate remedy at all, and this Court should denied Defendant for failing to adequately search the premises at DON.

## CONCLUSION

For the above reasons, the Defendant failed to adequately search for the records within the system of the DON. This Court should direct Defendant to searches as indicative hereinabove, and for such other and further relief as this Honorable Court deem just, equitable, and proper.

Respectfully submitted,

*[signature]*
Michael Trupei, <u>pro se</u>

-9-

## CERTIFICATE of SERVICE

I, Michael Trupei do hereby CERTIFY that this/my surreply has been on March 1st, 2007 hand-delivered to the institutional "RD" for the purposes to be forwarded via U.S. Mail, first class, upon the following:

United States Department of Justice
United States Attorney
District of Columbia
Judiciary Center
555 Fourth Street, N.W.
Washington, D.C. 20001

<u>Att</u>: Megan Rose

Michael Trupei, <u>pro se</u>

## VERIFICATION

Under 28 U.S.C. § 1746 of the United States Code I, Michael Trupei hereby verify, or state, under penalty of perjury that this/my surreply is to the best of my knowledge true, correct, certain, and complete.

Done on this 1st, day of March, 2007     By: Michael Trupei, <u>pro se</u>

-10-

EXHIBIT-A

# APPOINTMENT AFFIDAVITS

Trial Attorney
_(Position to which Appointed)_

09/19/2004
_(Date Appointed)_

Department of Justice
_(Department or Agency)_

Tax Division
_(Bureau or Division)_

Washington, D. C.
_(Place of Employment)_

I, MEGAN L. ROSE, do solemnly swear (or affirm) that—

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO THE PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

_(Signature of Appointee)_

Subscribed and sworn (or affirmed) before me this 20th day of September, 2004

at Washington (City)    D. C. (State)

(SEAL)

_(Signature of Officer)_

Commission expires 01/31/2008
_(If by a Notary Public, the date of his/her Commission should be shown)_

Notary Public, DEBRA L. MARKEY
_(Title)_

Note - If the appointee objects to the form of the oath on religious grounds, certain modifications may be permitted pursuant to the Religious Freedom Restoration Act. Please contact your agency's legal counsel for advice.

U.S. Office of Personnel Management
The Guide to Processing Personnel Actions

NSN 7540-00-634-4015

Standard Form 61
Revised August 2002
Previous editions not usable

EXHIBIT-A

EXHIBIT-B



U.S. Department of Justice

Executive Office for United States Attorneys

---

Human Resources Management Staff

Suite 8017, Bicentennial Building  
600 E Street, NW  
Washington, DC 20530

(202) 616-6473  
FAX (202) 305-1430

DEC 2  199

Honorable Charles R. Wilson  
United States Attorney  
Middle District of Florida  
Tampa, Florida

Dear Mr. Wilson:

    This refers to your recommended appointment of _____ as an Assistant United States Attorney for the Middle District of Florida.

    _____ has been converted from a time-limited to a permanent Excepted Appointment at a salary of $43,000 per annum (not including locality pay). An Appointment Affidavit should be executed before the Standard Form 50 (SF-50) is issued by your on-site servicing personnel office.

    _____ will serve a two-year trial period upon conversion to the Excepted Appointment. The time served in the _____ appointment is non-creditable for the _____ trial period. Until a trial period is completed, an attorney can be removed without cause or the right to appeal. A remark will be added to the employee's SF-50 informing her that completion of a two-year trial period is required.

    If you have any questions or concerns, please feel free to contact me on (202) 616-6830.

Sincerely,

Linda M. Schwartz  
Acting Assistant Director

EXHIBIT-B